JUDGE STITES
delivered the opinion of the court:
Mrs. Worthington, one of the appellants, and her sisters, who were also married women, were entitled, as devisees of their father, Isaac Crabtree, deceased, to a remainder interest in a slave named Henry, Mrs. Crabtree, the widow of the testator and owner for life of the slave, had sold her life estate in him to the appellee, Colston Crabtree.
This suit was brought by Worthington and wife against the appellee in order to obtain a sale of the slave, and a distribution of the proceeds among all parties, according to their several *480 interests. The petition also asks for all other proper relief to which the parties should be entitled.
The grounds relied on for a sale were, that the slave was ungovernable and insubordinate in his temper; was about to run away to a free state, and unless sold, would prove a total loss to his owners.
The co-devisees, with their husbands, answered, concurred in opinion with appellants as to the necessity and propriety of a sale, admitted the facts stated, and consented to any equitable order the chancellor might make.
Colston Crabtree likewise answered, and at first consented to a sale, but afterwards withdrew his consent, and resisted the relief sought by appellants.
Upon hearing, appellants were dismissed with costs, and of that judgment they complain.
The only question is, whether the facts disclosed by the evidence entitled them to any relief whatever.
It is obvious that a sale was properly refused, because the requisite steps to divest the femes covert of their interest in the • slave had not been taken. There was no privy examination of any one of them, nor any order or step taken towards such examination, nor was there any offer of bond or covenant on the part of the petitioner or either of the husbands of the co-devisees for the benefit of their wives, as required by chap. 86, art. 5, sec. 6, Revised Statutes, and Civil Code, sec. 540.
But it is contended by appellants that, although no error may have been committed in refusing a sale, the facts clearly show that the interests of the parties entitled in remainder were endangered by the course pursued towards the slave by Colston Crabtree, the owner of the life estate, and furnished abundant cause for requiring him to give bond with surety for the forthcoming of the slave at the death of Mrs. Sally Crabtree, for the benefit of the devisees in remainder. And it is complained that the chancellor erred in refusing to exact the bond authorized by the Revised Statutes, (chap. 93, art. 1, sec. 9,p. 628.)
The section referred to, as well as that immediately preceding it, was' evidently intended to furnish protection to persons entitled in remainder or reversion to slaves from the wrongful *481 acts of those enjoying the life estate in such property. Section 8 makes it the duty of the owners of the life estate in slaves to file annually, in the office of the clerk of the county where they reside, a statement in writing of the names, ages, and sex of such slaves, for failing to do which they subject themselves to a fine for the use of the remaindermen; and the sheriffs and assessors are required to report the names of such persons to the clerk of the circuit court. Section 9 provides, in substance, that a removal of such slaves out of the state by the tenant for life, or with his consent, without the written consent of those entitled in remainder or reversion, shall operate as a forfeiture of such life estate; and authorizes a recovery of the value of such slave with hire, in behalf of the remaindermen or reversioners. And, with a view to a more complete protection of the remaindermen or reversioners, and to furnish them indemnity in all cases where they may have reasonable grounds to apprehend an injury to their interests, the section provides generally, that “ a court of chancery may, for good cause shown, compel the tenant or owner of a life estate in a slave to give bond, with good surety, for the forthcoming of the slave at the termination of the same, and upon a failure to give the bond, make such order and decree as may be equitable.”
That there was in this case “good cause” for the exercise of the power thus conferred upon the chancellor, it seems to us, is very evident.
The slave and his owners lived in Daviess county, which borders on the Ohio river, and is only separated by that stream from a free state. One of the slaves belonging to the same estate had already escaped from service, and Henry had threatened to do likewise if he was restrained.
The appellee had sold Henry his own time; had been contracting with him as a free man; was permitting him to go at large and make trades for himself; did not keep or pretend to keep him in subjection, and was in various ways indulging him to an extent well calculated to render him insubordinate and valueless to the remaindermen.
Such conduct towards a slave was not only incompatible with and destructive of the interest of the remaindermen, but *482 in violation of law. It is forbidden by statutes under heavy penalties, enacted obviously for the purpose of preventing the pernicious results attending such indulgences to slaves.
Subordination is essential to the relation of master and slave, and alike beneficial to both. It is difficult to conceive of any injury, short of an entire destruction of the property, more serious to the interests of reversioners or remaindermen in slaves, than such treatment by the tenant for life. Its inevitable tendency is to render them discontented, insubordinate, and disposed, whenever subjected to proper restraints, to seek such change of abode as will restore to them their usual privileges. Such acts on the part of the tenant for life certainly constitute “good cause” for the exaction of the bond.
We are of opinion, therefore, that the appellee should have been required to execute bond for the forthcoming of the slave, as provided by the section supra, and that the court erred in refusing to require it of him. The bond in a case like the present should remain subject to the control of the court, so that whenever the causes demanding the indemnity for the benefit of the remaindermen should cease to exist, the court may dispose of the bond in such manner as would be equitable to the tenant for life.
Wherefore, the judgment is reversed, and cause remanded for further proceedings in conformity with this opinion.